# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 15, 2015 Session

## MARGIE HUNT ET AL V. SUDHA NAIR, M.D. ET AL

**Interlocutory Appeal from the Circuit Court for Knox County**
**No. 21614     Harold Wimberly, Judge**

_____

### No. E2014-01261-COA-R9-CV-FILED-SEPTEMBER 25, 2015
_____

This interlocutory appeal involves a health care liability action.[1]  The plaintiffs, Margie Hunt and husband, Rickey Hunt,[2] claim that Mrs. Hunt suffered injuries proximately caused by the conduct of the defendants with respect to two surgeries.[3]  Prior to filing their complaint, the plaintiffs gave timely written notice of their claim to potential defendants.  *See* Tenn. Code Ann. § 29-26-121(c) (Supp. 2013).  Each of the three defendants moved to dismiss the complaint.  Their separate motions were predicated on their assertion that the plaintiffs' pre-suit notice failed to comply with the requirements of Tenn. Code Ann. § 29-26-121, part of the Tennessee's Health Care Liability Act. Specifically, the defendants argue that the plaintiffs failed to provide a HIPAA-compliant[4] medical authorization with their pre-suit notice.  They also contend that the plaintiffs failed to attach to the complaint the medical authorization and also the pre-suit notice served upon the defendants.  The defendant Dr. Nitin J. Rangnekar also relies upon the ground of insufficiency of service of process. The trial court denied each defendant's motion.  On the defendants' further motions, the court granted them permission to pursue an interlocutory appeal pursuant to the provisions of Tenn. R. App. P. 9.  We likewise granted the defendants permission to file a Rule 9 appeal.  We affirm the judgment of the trial court.

---

[1] Legislation enacted by the General Assembly, effective April 23, 2012, substituted "health care liability" for "medical malpractice" in every place that the latter appeared in the Code.  *See* Act of Apr. 23, 2012, ch. 798, 2012 Tenn. Pub. Acts.

[2] Mr. Hunt's suit is derivative in nature.

[3] One of the defendant doctors, Dr. Nitin J. Rangnekar, was only involved in the second surgery.

[4] Health Insurance Portability and Accountability Act of 1996.

1

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed; Case Remanded for Further Proceedings**

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY AND JOHN W. MCCLARTY, JJ., JOINED.

Heidi A. Barcus and Daniel T. Swanson, Knoxville, Tennessee, and Thomas W. Lawrence, Jr. and Matthew A. Moushon, Nashville, Tennessee, for the appellant, Sudha Nair, M.D.

David E. Waite, Knoxville, Tennessee, for the appellant, Nitin J. Rangnekar, M.D.

Mark T. Smith and Lauren Z. Curry, Nashville, Tennessee, for the appellant, Metro Knoxville HMA, LLC, dba Tennova Healthcare-Turkey Creek Medical Center.

Brett D. Stokes, Knoxville, Tennessee, for the appellees, Margie Hunt and husband, Rickey Hunt.

## OPINION

### I.

In their complaint, the plaintiffs assert that, in March 2010, the plaintiff[5] told her physician, the defendant Dr. Sudha Nair, that she wanted to undergo a hysterectomy and a bilateral salpingo oophorectomy – procedures that involve the removal of the uterus, ovaries, and fallopian tubes – in order to alleviate the abnormal uterine bleeding she had been experiencing. Dr. Nair performed surgery in May 2010. When her pain continued following the surgery, she underwent a second and related surgery in October 2012. The latter surgery was performed by Dr. Nair and the defendant Dr. Rangnekar. The plaintiffs claim that Mrs. Hunt was assured the first surgery would involve the removal of her uterus, ovaries, and fallopian tubes. She later learned – sometime in October 2012 – that this had not happened. In fact, even following the second surgery, her left ovary and left fallopian tube were still intact. The plaintiffs assert that both surgeries were negligently performed and outside the scope of Mrs. Hunt's consent. The plaintiffs state in their brief that

> [t]his case is a medical malpractice action for the negligent acts and omissions of all of the named [defendants], as well as an action for lack of informed consent, failure to diagnose, failure to treat, improperly dispensing medication,

---

[5] When the singular "plaintiff" is used in this opinion, we are referring to Mrs. Hunt.

substandard medical records that have been altered or forged
or tampered with or simply were not ever made . . .

On September 9, 2013, the plaintiffs attempted to deliver pre-suit notice to all of the defendants. Four months later, the plaintiffs filed suit. The plaintiffs neglected to attach to the complaint two documents required by Tenn. Code Ann. § 29-26-121(b): copies of the pre-suit notice and the medical authorization. The plaintiffs did attach to their complaint a certificate of good faith and an affidavit of service of the pre-suit notice.

On January 30, 2014, Dr. Rangnekar filed a Tenn. R. Civ. P. 12.02 motion to dismiss the plaintiffs' complaint. He also sought an enlargement of the time to respond.[6] Dr. Rangnekar's initial motion was based solely on the plaintiffs' failure to comply with a requirement set forth in Tenn. Code Ann. § 29-26-121(b), *i.e.*, the attaching to the complaint of all pre-suit notice documents. The next day, on January 31, the plaintiffs filed a response acknowledging that the documents had not been filed with their complaint. They explained the error as a "mere oversight." In an attempt to cure the defect, the plaintiffs attached to their response the missing documents as "Late Filed Exhibit A." Dr. Rangnekar responded that the plaintiffs' oversight had prejudiced him because he was unable, using the authorization of the plaintiff, to obtain the necessary documents related to plaintiff's medical records. Following all of this, the trial court entered an "Agreed Qualified Protective Order for the Release of Records" – signed by both parties – allowing Dr. Rangnekar access to plaintiff's medical records. Shortly thereafter, Dr. Nair also filed a Tenn. R. Civ. P. 12.02 motion to dismiss and a motion for summary judgment. Dr. Nair alleged that the plaintiffs (1) failed to comply with Tenn. Code Ann. § 29-26-121(b) when they filed their complaint; (2) did not properly serve her with pre-suit notice, in that the documents sent to her were actually addressed to Dr. Rangnekar; and (3) failed to provide her with a HIPAA-compliant medical release. Dr. Nair criticizes the medical release provided by the plaintiffs for not naming the specific persons or class of persons authorized to make the request or disclosure and for limiting the plaintiff's medical records that Dr. Nair could access, *i.e.*, only those records from January 2010 to December 2012.

At a hearing on March 4, 2014, the trial court rejected the defendants' assertion that the plaintiffs failed to attach the medical release authorization and pre-suit notice to their complaint. The court declined at that time to rule on the sufficiency of the authorization.

Later in March, the defendant Metro Knoxville HMA, LLC, doing business as Tennova Healthcare-Turkey Creek Medical Center (Tennova) filed a motion to dismiss on grounds that plaintiffs failed to attach required documentation to their original complaint, failed to provide a HIPAA-compliant medical release, and did not properly

---

[6] The record does not contain an order addressing this request.

3

serve Tennova as required by Tenn. Code Ann. § 29-26-121(a)(3)(B)(ii). On April 2, Dr. Rangnekar, for the first time, raised by motion the issue of insufficient service of process and lack of personal jurisdiction.

Ultimately, the trial court declined to grant any of the defendants' remaining motions. Instead, it held that the medical authorization provided by the plaintiffs was HIPAA-compliant, citing two reasons: first, that the authorization granted permission for records to be sent to the named defendants, and second, that the authorization's limitation of the records to be released to a two-year period was in keeping with the Supreme Court's understanding of HIPAA. In a ruling from the bench on May 14, 2014, the court added that "the Supreme Court has stated that such a release in a case like this does not have to apply to everything in a person's medical history, only the information that would be necessary to determine whether or not there is a valid claim in the particular situation." For the above reasons and in reliance on the opinion in *Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512 (Tenn. 2014), which was released just before the May 14 hearing, the trial court stated "what has been done in this case is sufficient compliance with the statute to allow the case to go on past these Rule 12 motions to dismiss the case." The defendants have appealed, seeking a review of the trial court's denial of their motions to dismiss.

## II.

As previously noted, this matter comes to us as an interlocutory appeal. Therefore, our review is limited to the issues certified in the order of the trial court and "those matters clearly embraced within the questions certified." *Tenn. Dep't of Mental Health & Mental Retardation v. Hughes*, 531 S.W.2d 299, 300 (Tenn. 1975). The trial court certified the following issues for review, as quoted directly from the court's order:

> Whether the medical authorization provided by Plaintiffs with their pre-suit notice satisfies Tenn. Code Ann. § 29-26-121 and is HIPAA compliant and if not, whether the deficiencies warrant dismissal of the Complaint.

> Whether a plaintiff's failure to include the notice documentation and medical authorization with the Complaint warrants dismissal of the Complaint in the absence of any showing of extraordinary cause.

> What steps defense counsel should take when presented with a defective, or arguably defective pre-suit medical authorization.

4

Whether the collective deficiencies in Plaintiff's attempt to comply with Tenn. Code Ann. § 29-26-121, as alleged in the Motion to Dismiss, together warrant dismissal of the Complaint.

Whether Dr. Rangnekar received sufficient service of process of the Plaintiff's suit against him such that the trial court has personal jurisdiction over him in this matter.

(Lettering of paragraphs omitted.)

III.

The defendants have properly employed a Tenn. R. Civ. P. 12.02 motion in challenging the plaintiffs' compliance with Tenn. Code Ann. § 29-26-121. ***Hughes v. Henry Cnty. Med. Ctr.***, No. W2014-01973-COA-R3-CV, 2015 WL 3562733, at *2 (Tenn. Ct. App. W.S., filed June 9, 2015); ***Myers v. AMISUB (SFH), Inc.*** 382 S.W.3d 300, 307 (Tenn. 2012). As ***Myers*** noted,

> [i]n the motion, the defendant should state how the plaintiff has failed to comply with the statutory requirements by referencing specific omissions in the complaint and/or by submitting affidavits or other proof. Once the defendant makes a properly supported motion under this rule, the burden shifts to the plaintiff to show either that it complied with the statutes or that it had extraordinary cause for failing to do so.

***Myers***, 382 S.W.3d at 307-08 (internal citations omitted); *see also* ***Johnson v. Parkwest Med. Ctr.***, No. E2013-01228-COA-R3-CV, 2014 WL 3765702, at *3 (Tenn. Ct. App. E.S., filed July 31, 2014), *appeal denied* (Dec. 17, 2014).

The issues before us pertain to matters of law. Hence, we review them with no presumption of correctness accorded to the trial court's judgment. ***Thurmond,*** 433 S.W.3d at 516-17 (citing ***Myers,*** 382 S.W.3d at 307; ***Leach v. Taylor,*** 124 S.W.3d 87, 90 (Tenn. 2004)). When the trial court has excused compliance, we review the trial court's decision under an "abuse of discretion standard." A trial court abuses its discretion only when it "applie[s] an incorrect legal standard or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." ***Hughes,*** 2015 WL 3562733, at *2 (quoting ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001)).

This case involves statutory interpretations, which are also a matter of law. We review such issues with no presumption of correctness:

5

[T]his Court's primary duty is to ascertain and effectuate legislative intent without broadening a statute beyond its intended scope.  In fulfilling this duty, we construe statutes in a reasonable manner which avoids statutory conflict and provides for harmonious operation of the laws. Our analysis always begins with the words the General Assembly has used in the statute. If the statutory language is clear and unambiguous, we apply its plain meaning, understood in its normal and accepted usage, without a forced interpretation. Where statutory language is ambiguous, we consider the overall statutory scheme, the legislative history, and other sources.

*Thurmond*, 433 S.W.3d at 516-17 (internal citations and quotation marks omitted).

IV.

A.

Tenn. Code Ann. § 29-26-121(a) states the following:

(a)(1): Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.

(2) The notice shall include:

\* \* \*

(E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

Tenn. Code Ann. § 29-26-121(a)(1)-(3)**.**  Under federal regulations, a HIPAA-compliant authorization must include the following:

(1) Core elements. A valid authorization under this section must contain at least the following elements:

6

(i) A description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion.

(ii) The name or other specific identification of the person(s), or class of persons, authorized to make the requested use or disclosure.

(iii) The name or other specific identification of the person(s), or class of persons, to whom the covered entity may make the requested use or disclosure.

(iv) A description of each purpose of the requested use or disclosure . . .

(v) An expiration date or an expiration event that relates to the individual or the purpose of the use or disclosure . . .

(vi) Signature of the individual and date. If the authorization is signed by a personal representative of the individual, a description of such representative's authority to act for the individual must also be provided.

(2) Required statements.  In addition to the core elements, the authorization must contain statements adequate to place the individual on notice of all of the following:

(i) The individual's right to revoke the authorization in writing, and either:

(A) The exceptions to the right to revoke and a description of how the individual may revoke the authorization . . .

(ii) The ability or inability to condition treatment, payment, enrollment or eligibility for benefits on the authorization, by stating either:

(A) The covered entity may not condition treatment, payment, enrollment or eligibility for benefits on whether the individual signs the authorization when the prohibition on conditioning of authorizations in paragraph (b)(4) of this section applies; or

7

(B) The consequences to the individual of a refusal to sign the authorization when, in accordance with paragraph (b)(4) of this section, the covered entity can condition treatment, enrollment in the health plan, or eligibility for benefits on failure to obtain such authorization.

(iii) The potential for information disclosed pursuant to the authorization to be subject to redisclosure by the recipient and no longer be protected by this subpart.

(3) Plain language requirement. The authorization must be written in plain language.

45 C.F.R. § 164.508(c)(1)-(3) (2009).

Pre-suit notice in a health care liability action is "mandatory, and section 29–26–121(a)(1) demands strict compliance." *Arden v. Kozawa*, No. E2013-01598-SC-R11-CV, 2015 WL 3958180, at *3 (Tenn., filed June 30, 2015) (citing *Myers*, 382 S.W.3d at 309). "The consequence for failure to give pre-suit notice is dismissal of the lawsuit." *Kozawa*, 2015 WL 3958180, at *3 (citing *Foster v. Chiles*, No. E2012–01780–SC–R11–CV, 2015 WL 343872, at *4 (Tenn., filed Jan. 27, 2015)). However, "[t]he content and affidavit requirements of Tennessee Code Annotated sections 29–26–121(a)(2) . . . are not mandatory, but directory, and can be achieved through substantial compliance." *Kozawa*, 2015 WL 3958180, at *3 (citing *Thurmond*, 433 S.W.3d at 520; *Stevens ex rel. Stevens v. Hickman Comm. Health Care Servs., Inc.*, 418 S.W.3d 547, 555 (Tenn. 2013)).

In *Stevens,* the Supreme Court applied the "substantial compliance" test to the HIPAA regulations found at 45 C.F.R. § 164.508. *Stevens*, 418 S.W.3d at 555. To determine substantial compliance, "courts must view both: (1) the extent of the noncompliance; and (2) whether the noncompliance frustrated the purpose of section 29–26–121, or otherwise prejudiced the defendants." *Phillips v. Casey*, No. E2014-01563-COA-R9-CV, 2015 WL 4454781, at *6 (Tenn. Ct. App. E.S., filed July 21, 2015) (citing *Stevens*, 418 S.W.3d at 556). The High Court in *Stevens* held that the purpose of Tenn. Code Ann. § 29-26-121(a)(2)(E) goes beyond giving notice of a potential claim and instead intends to "equip defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early access to a plaintiff's medical records." *Stevens*, 418 S.W.3d at 555. Generally, HIPAA prohibits medical providers from releasing patient records without proper permission from the individual patient. *Id.* As a result, "it is a threshold requirement of the statute that the plaintiff's medical authorization must be sufficient to enable defendants to obtain and review a plaintiff's relevant medical records." *Id.* (citing C.F.R. § 164.508(a)(1)).

The defendants challenge plaintiff's medical authorization release form on multiple grounds. First, they assert that the form fails to adhere to several sub-parts of 45 C.F.R. § 164.508(c) – namely (1)(ii), (iii); (2); and (3). The defendants claim that the plaintiff's authorization fails to specifically identify "the person(s) or class of persons authorized to make the requested disclosure" and "the person(s) or class of persons, to whom the covered entity may make the required disclosure." Just as in **Roberts v. Prill**, No. E2013-02202-COA-R3-CV, 2014 WL 2921930, *5 (Tenn. Ct. App. E.S., filed June 26, 2014), the defendants state that the authorization only releases medical records to plaintiffs' counsel and that, as in **Roberts**, the release should be deemed non-compliant with HIPAA.

The trial court found this argument to be without merit. While the medical release is printed on the letterhead of the plaintiffs' counsel, it identifies in plain language the person(s) or class of person(s) authorized to make the requested disclosure and the person(s) or class of person(s) who may receive the information disclosed:

> **I give permission for the following records to be sent to, THE PERSONS OR ENTITES LISTED BELOW or any of their designated agents** . . .
>
> *Parties: Dr. Sudha Nair, Dr. Nitin J. Rangnekar, Tennova Healthcare, Women's Care Group, ISIS Women's Care Group, Tennova Surgical Associates LLC, Metro Knoxville HMA*
>
> *Application: The above-listed individuals may obtain any and all medical records for* **Margie Hunt** *for the time frame between January, 2010 through December, 2012 with any and all medical treatment(s) or provider(s) that rendered care to her for this period at Tennova Healthcare or formerly Mercy Medical Center which said providers and treatments were rendered in Knox County TN.*

(Capitalization, bold font, and italics in original.) No portion of this release form grants the plaintiffs' counsel permission to request and receive the plaintiff's medical records. The fact that the authorization is printed on the letterhead stationary of the plaintiffs' counsel is immaterial. The authorization clearly identifies what parties may release and receive plaintiff's medical information, and the plaintiffs' counsel is not included in either designation.

The defendants further challenge the plaintiff's medical release because it fails to include certain required statements from 45 C.F.R. § 164.508(c)(2). We disagree. The release includes plain language that adequately notifies the plaintiff of her right to revoke

the authorization and describes the manner in which she can do so. The subject release goes so far as to state two instances when the authorization automatically terminates: (1) after a lapse of three years or (2) at the conclusion of litigation.

We find that the plaintiff's medical authorization fulfills all of the requirements of 45 C.F.R. § 164.508(c), except that it does not use certain language specified in 45 C.F.R. § 164.508(c)(ii)-(iii). "[L]ess-than perfect compliance with Tenn. Code Ann. § 29-26-121(a)(2)(E) . . . should not derail a healthcare liability claim. Non-substantive errors and omissions will not always prejudice defendants by preventing them from obtaining a plaintiff's medical records." *Stevens*, 418 S.W.3d at 555.

Here, the plaintiffs' failure to employ certain language from § 164.508(c)(ii)-(iii) did not prejudice the defendants. The defendants used the authorization provided by the plaintiffs in seeking medical records from four providers and received only one rejection. That rejection came from co-defendant Tennova because Tennova incorrectly determined that the authorization only granted permission to release the records to the plaintiffs' attorney. As we have earlier indicated in this opinion, the plain language of the authorization grants the defendants – rather than the plaintiffs – the authority to request the plaintiff's relevant medical records. The trial court held that the plaintiff's authorization "clearly states that plaintiff Hunt gives permission for records to be sent to the person[s] or entities listed below, not to the [plaintiffs'] law firm on whose letterhead this is printed."

Ultimately, "the touchstone of this analysis is whether a party's procedural error resulted in actual prejudice to an opposing party." *Stevens*, 418 S.W.3d at 555. Furthermore,

> This Court has recently issued several opinions in which substantial noncompliance with section 29-26-121(a)[(2)(E)] resulted in the dismissal of a healthcare liability claim. . . . In all of these cases resulting in dismissals, the defendants were prejudiced by the fact that they were unable to obtain the patient's medical records due to some flaw in the medical authorization.

*Hughes*, 2015 WL 3562733, at *4 (internal citations omitted).

In addition, the defendants challenge the plaintiff's medical authorization on the ground that it fails to authorize the release of her "complete medical records from each other provider receiving notice." However, the Supreme Court held in *Stevens* that releasing access to full and complete medical records are not required under the statute:

[T]he intended meaning of the phrase 'complete medical records,' as used in § 29–26–121(a)(2)(E), was not to grant defendants access to a plaintiff's entire medical history. Instead, we believe that the purpose of this requirement is to afford defendants access to all medical records that are relevant to the particular claim at issue. In determining whether medical records are relevant for purposes of litigation, defendants should continue to adhere to the 'minimum necessary' standard that traditionally applies to a provider's use and disclosure of a patient's private health records under 45 C.F.R. § 164.502(b)(1): "When using or disclosing protected health information or when requesting protected health information from another covered entity or business associate, a covered entity or business associate must make reasonable efforts to limit protected health information to the minimum necessary to accomplish the intended purpose of the use, disclosure, or request."

*Stevens*, 418 S.W.3d at 558. The defendants assert that the "complete medical records, relevant for investigating this claim simply are not covered by this time period." The plaintiffs' health care liability suit focuses on the abnormal uterine bleeding the plaintiff reported to Dr. Nair in their March 2010 conversation, the subsequent treatment sought in response to that conversation, the May 2010 and October 2012 surgeries, and the aftermath of each surgery. In consideration of these facts and the "minimum necessary standard" in 45 C.F.R. § 164.502(b)(1), we find that the plaintiff authorized the release of relevant medical records for an appropriate time period for the purposes of Tenn. Code Ann. § 29-26-121(a)(2)(E). For these reasons, we find that the plaintiff's medical authorization is substantially compliant with HIPAA and affirm the trial court's decision to deny the defendants' motions to dismiss on this ground.

## B.

Tenn. Code Ann. § 29-26-121(b)[7] required the plaintiffs to include a copy of the medical authorization with the complaint, as well as a copy of the pre-suit notice sent to

---

[7] In pertinent part Tenn. Code Ann. § 29-26-121(b) is as follows:

> (b) If a complaint is filed in any court alleging a claim for health care liability, the pleadings shall state whether each party has complied with subsection (a) and shall provide the documentation specified in subdivision (a)(2). . . . The court has discretion to excuse compliance with this section only for extraordinary cause shown.

the defendants, which includes all information required by Tenn. Code Ann. § 29-26-121(a)(2). Here, the plaintiffs admittedly failed to attach to the complaint the medical authorization and the pre-suit notice letters. They filed "Late Filed Exhibit A" attaching the missing documents on January 31, 2014. The plaintiffs late-filed these exhibits one day after Dr. Rangnekar filed his initial motion to dismiss, which addressed this omission.

Previously this Court has held that it is proper to allow a plaintiff to correct an oversight in filing if the plaintiff had given sufficient notice under the statute to defendants, but failed to comply with all the "strictures of section 121." *Chambers ex rel. Chambers v. Bradley Cnty.*, No. E2013-00164-COA-R10-CV, 2014 WL 1266101, at *7 (Tenn. Ct. App. E.S., filed Mar. 28, 2014). As discussed above, the plaintiffs provided the materials necessary to satisfy the pre-suit notice requirements and provided a medical authorization that substantially complied with HIPAA. Thus, the defendants, more than sixty days before the complaint was filed, had already received all of the materials that the plaintiffs failed to attach to the complaint and subsequently added in "Late Filed Exhibit A." The defendants were not prejudiced by the omission. Furthermore, since the omission was quickly corrected by the plaintiffs and did not prejudice the defendants in the meantime, the plaintiffs substantially complied with Tenn. Code Ann. § 29-26-121(b).

In *Thurmond*, a plaintiff failed to attach an affidavit with the complaint at the time of filing and sought to correct the error by filing the affidavit five days later. *Thurmond*, 433 S.W.3d at 514. There, the defendants moved to dismiss the plaintiff's complaint for failure to comply with the statute, although the defendants did not articulate how plaintiff's error prejudiced them. *Id.* at 513. The Supreme Court agreed with defendants that "the plain statutory language directed Plaintiff to file with the complaint an affidavit of the party mailing the notice establishing that the specified notice was timely mailed by certified mail, return receipt requested." *Id.* at 520 (internal citations and quotation marks omitted). Still, the Court ultimately declined to say that this failure should automatically result in dismissal of the suit. "[A]s this Court recognized in *Myers*, the essence and fundamental purpose of the statute is providing notice of potential health care liability claim before the lawsuit is filed." *Id.* (citing *Myers*, 382 S.W.3d at 309). The Supreme Court held that,

> [a]s this case clearly illustrates, where pre-suit notice *was* timely served, insisting upon strict compliance with the statute requiring the filing of an affidavit with the complaint is not essential to avoid prejudicing an opposing litigant. As already stated, Defendants have not made any claim of prejudice resulting from Plaintiff's failure to file the affidavit

Tenn. Code Ann. § 29-26-121(b).

> with the complaint. Thus, substantial compliance with the
> statutory affidavit requirement will suffice.

**Thurmond**, 433 S.W.3d at 520-21 (internal citations and quotation marks omitted; emphasis in original). Similarly here, the plaintiffs' failure to attach the medical authorization and pre-suit notice documents to the complaint when it was initially filed did not result in prejudice to the defendants. Therefore, we decline to dismiss the suit on this ground.

C.

As stated above, in recent cases concerning substantial noncompliance with Tenn. Code Ann. § 29-26-121(a)(2)(E), the determinative question that has emerged is whether defendants were prejudiced by a plaintiff's authorization, such that "they were unable to obtain the patient's medical records due to some flaw in the medical authorization." **Hughes**, 2015 WL 3562733, at *4. Given this, a defendant can strengthen a motion to dismiss or avoid an unnecessary challenge by making reasonable efforts to use the plaintiff's authorization to acquire plaintiff's medical records prior to moving to dismiss for failure to substantially comply with Tenn. Code Ann. § 29-26-121(a)(2)(E).

Here, the defendants properly moved for dismissal under Tenn. R. Civ. P. 12.02 to challenge what they characterized as an insufficient medical authorization. In the weeks before and after filing his motion to dismiss, Dr. Rangnekar's counsel attempted to acquire the plaintiff's medical records using the authorization, but each time his request lacked official verification – such as a notice of appearance – to establish that the attorneys requesting the documents were in fact representing Dr. Rangnekar in his action. Hence, the deficiency was the lack of verification and not a deficiency with the wording of the authorization.

D.

In addition to the challenges discussed above, Tennova and Dr. Nair also argue that the manner in which they were served pre-suit notice in September is not compliant with Tenn. Code Ann. § 29-26-121(b). Both defendants moved for dismissal on this additional ground. The trial court declined to dismiss.

Dr. Nair's challenge asserts that the pre-suit notice sent to her at ISIS Women's Care Group "contained the address of Dr. Nair" but "the letter itself was directed to co-Defendant Dr. Nitin J. Rangnekar." In support of her claim, Dr. Nair submitted an affidavit from the practice manager at ISIS Women's Care who "personally received [the] letter and enclosures addressed to Dr. Nitin Rangnekar from [the plaintiffs' counsel], which was carbon copied to Dr. Nair's attention." In this case, the pre-suit notice materials were sent to Dr. Nair. The letter first presented the names and addresses

13

of the recipients, listing three addresses for Dr. Nair, three for Dr. Rangnekar, and one for Tennova.  Following the addresses, the letter began:

Re:   Patient:        Margie Hunt (D.O.B. 12/08/1962)
        Claimants:   Rickey D. Hunt (Husband)
                          Margie Hunt (Patient)

Dear Dr. Nitin J. Rangnekar:

Please be advised that the above-named claimants, are giving you notice pursuant to T.C.A. § 29-26-121 that a medical malpractice claim will be filed against you . . .

The following information was listed below the "notice language" and the signature of the plaintiffs' attorney:

**LIST OF HEALTHCARE PROVIDERS TO WHOM NOTICE HAS BEEN GIVEN PURSUANT TO T.C.A. § 29-26-121(A) REGARDING PATIENT: Margie Hunt are indicated below:**

Dr. Sudha Nair, M.D.
Women's Care Group

\*         \*         \*

Dr. Sudha Nair, M.D.
Tennova Healthcare

\*         \*         \*

Dr. Sudha Nair, M.D.
ISIS Women's Care Group
C/O Registered Agent:
Sudha Nair
[Dr. Nair's personal address]

(Bold font and capitalization in original.)  The plaintiffs' counsel stated through a sworn affidavit that the pre-suit notice letter and medical authorization were sent to the multiple locations listed above.  Based on the information, we find that Dr. Nair received sufficient notice prior to the filing of the suit that the plaintiffs intended to file a health

14

care liability claim naming her as a defendant, this despite the plaintiffs' error in addressing the notice to Dr. Rangnekar.

Tennova asserts that the plaintiffs sent pre-suit notice materials to Tennova's principal place of business, but failed to send notice to Tennova's registered agent, CT Corporation System, which is located at a different address. As a result, Tennova argues that plaintiffs failed to comply with Tenn. Code Ann. § 29-26-121(a)(3)(B)(ii) by not satisfying the following provisions of the statute pertaining to service on "a corporation or other business entity":

> To a health care provider that is a corporation or other business entity at both the address for the agent for service of process, and the provider's current business address, if different from that of the agent for service of process; provided, that, if the mailings are returned undelivered from both addresses, then, within five (5) business days after receipt of the second undelivered letter, the notice shall be mailed in the specified manner to the provider's office or business address at the location where the provider last provided a medical service to the patient.

Tennova does not articulate or provide proof of how the plaintiffs' failure to strictly comply with the subject statute prejudiced them.

The Supreme Court recently held that substantial, rather than strict, compliance is sufficient for the "content and affidavit requirements" of Tenn. Code Ann. § 29-26-121(a)(2), (a)(3), and (a)(4), including the "manner and proof of service" requirements in Tenn. Code Ann. § 29-26-121(a)(3)(B) and (a)(4). *Kozawa*, 2015 WL 3958180, at *4. "The overarching purpose of the pre-suit notice statute is to ensure that health care defendants receive timely notice of a forthcoming lawsuit. . . . Above all, these changes to the pre-suit notice statute were meant to ensure that notice is provided to health care defendants before suit is filed." *Id.*, at *4, *6.

When a defendant is not prejudiced by a plaintiff's failure to strictly comply with the statute, this court has previously considered whether "[t]he purpose of the statute and the essence of the thing to be accomplished, *i.e.*, pre-suit notice to the defendant, have both been satisfied." *Hughes*, 2015 WL 3562733, at *5. Much like in *Chambers*,

> [t]he defendants' argument elevates form over substance and conflates means with ends. The aim of Tenn. Code Ann. § 29-26-121 is to make sure that prospective defendants receive adequate and timely notice of possible claims against them …

If we were to accept the defendants' argument at face value, we would be forced to conclude that any deviation from the strict letter of Tenn. Code Ann. § 29-26-121, no matter how small, would compel the courts to dismiss any medical malpractice claim asserted, no matter how meritorious. This would negate the strong preference of our law to resolve claims on their merits whenever possible.

*Chambers*, 2014 WL 1266101, at *6 (quoting *Hinkle v. Kindred Hosp.*, No. M2010-02499-COA-R3-CV, 2012 WL 3799215, at *15 (Tenn. Ct. App. M.S., filed Aug. 31, 2012)).

In summary, although the plaintiffs failed to strictly comply with Tenn. Code Ann. § 29-26-121, the defendants did not establish how they were prejudiced by this failure. Hence, the Court concludes that the defendants were not prejudiced by the plaintiffs' errors. Because the plaintiffs substantially complied with § 29-26-121 and the plaintiffs' errors in failing to strictly comply did not result in prejudice to the defendants, we hold that their action should not be dismissed due to the plaintiffs' failure to attach the medical authorization and pre-suit notice letters with their complaint.

E.

Dr. Rangnekar also moved to dismiss the plaintiffs' suit on the ground of insufficient service of process. The plaintiffs made efforts to serve Dr. Rangnekar on January 15, 2014. At that time, a deputy sheriff from the civil warrants division of the Knox County Sheriff's Department took the summons and a copy of the complaint to Dr. Rangnekar's office, asked for him personally, and left process with a person whom the officer believed to be Dr. Rangnekar's office manager. Additionally, Mr. Hunt testified that, on April 8, 2014, he appeared with plaintiffs' counsel at Dr. Rangnekar's office, requested him personally, waited while his staff called and texted him to notify him of their presence, and eventually left the documents with an office worker who at that time signed a statement from the plaintiffs' counsel stating, "I have the actual and express authority to accept service of process by, for, and on behalf of Dr. Rangnekar." Dr. Rangnekar alleges that he never expressly authorized the office worker to accept service on his behalf and, hence, he has never been personally served.

Ultimately, the trial court found as follows in a hearing on June 13, 2014:

This is not an instance where an officer or someone else just goes up and gives [process] to whoever [sic] is there or someone just signs for a return receipt, certified mail. Appears to the Court in this particular situation that it was known what the officer and the attorneys were there for, and

16

after some conversations in each instance, a person was presented to them saying that this is the person that has the authority to accept service of pleading process in a lawsuit. For those reasons, then, the Court overrules the motion to dismiss based on inadequate service of process as to Dr. Rangnekar.

We agree with the trial court's analysis. In addition, we find another basis for the court's holding on the issue of service of process.

"Insufficiency of service of process is an affirmative defense that must be presented in the defendant's answer or in a pre-answer motion." *Allgood v. Gateway Health Sys.*, 309 S.W.3d 918, 925 (Tenn. Ct. App. 2009) (citing Tenn. R. Civ. P. 12.02(5)). Specifically, the Tennessee Rules of Civil Procedure provide, in part, that

> [e]very defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion in writing: . . . (2) lack of jurisdiction over the person . . . (5) insufficiency of service of process . . . A motion making any of these defenses shall be made before pleading if a further pleading is permitted.

Tenn. R. Civ. P. 12.02. Rule 8.03 states that when asserting an affirmative defense "a party shall set forth affirmatively facts in short and plain terms." Tenn. R. Civ. P. 8.03. Noncompliance with Tenn. R. Civ. P. 8.03 results in a waiver of the defense. *Allgood,* 309 S.W.3d at 925. "A party waives all defenses and objections which the party does not present either by motion as hereinbefore provided, or, if the party has made no motion, in the party's answer or reply," though defenses made under Rule 12.02(2) and (5) "shall not be raised by amendment." Tenn. R. Civ. P. 12.08. Based on these rules, "A pleader should assume . . . that the defenses of lack of personal jurisdiction . . . and insufficiency of service of process will be waived if not included in the pleader's first response to the complaint, whether it be by answer or a Rule 12.02 motion." *Young ex rel. Young v. Kennedy*, 429 S.W.3d 536, 548-49 (Tenn. Ct. App. 2013) (quoting Robert Banks, Jr. & June F. Entman, Tennessee Civil Procedure, § 5-6(v) (3d ed. 2012)).

Dr. Rangnekar's initial response to the complaint was a motion to dismiss filed January 30, 2014. His motion was based upon the plaintiffs' failure to attach the pre-suit notice documentation and a HIPAA-complaint medical authorization to the complaint. On March 4, 2014, the trial court denied Dr. Rangnekar's motion.

17

Dr. Rangnekar failed to include insufficiency of service of process as a ground in his initial response to the complaint. "[I]nsufficiency of service of process will be waived if not included in the pleader's first response to the complaint. . . ." *Young*, 429 S.W.3d at 548-49. The defense of insufficiency of service of process was waived by Dr. Rangneckar when he failed to include it in his initial response. As a result, Dr. Rangnekar's motion to dismiss based on insufficient service of process was properly denied by the trial court.

V.

The judgment of the trial court denying defendants' motions to dismiss is affirmed. Costs on appeal are taxed to Dr. Nair, Dr. Rangnekar, and Tennova. This case is remanded to the trial court for further proceedings.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE

18